UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| REBECCA TEREISE, | CIV. NO. 20-00279 LEK-RT |
| Plaintiff, | |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL;
REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION;
AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Before the Court is Plaintiff Rebecca Tereise's ("Tereise") Complaint for Review of Social Security Disability Benefits and Supplemental Security Income Determinations ("Complaint"), filed on June 19, 2020, [dkt. no. 1,] in which she appeals Administrative Law Judge Jesse J. Pease's ("ALJ") May 31, 2019 Decision ("Appeal"). The ALJ issued the Decision after conducting a hearing on May 20, 2019. [Administrative Record Dated November 30, 2020 ("AR"), filed 1/19/21 (dkt. no. 17), at 15 (dkt. no. 17-3 at PageID #: 111).[1]] The ALJ ultimately concluded that Tereise was not disabled under

---

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is AR pages 12-28. [Dkt. no. 17-3 at PageID #: 108-24.]

§§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. [Decision, AR at 24 (dkt. no. 17-3 at PageID #: 120).]

Tereise's Opening Brief was filed on May 13, 2021. [Dkt. no. 23.]  Defendant Andrew Saul, Commissioner of Social Security,[2] filed the Answering Brief on June 28, 2021, and Tereise filed her Reply Brief on August 4, 2021.  [Dkt. nos. 27, 30.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  For the reasons set forth below, Tereise's Appeal is granted in part and denied in part. The Appeal is granted, insofar as the Decision is reversed, and the Appeal is denied as to Tereise's request for a remand with instructions to award benefits.  The matter is remanded to the ALJ for further proceedings consistent with this Order.

## BACKGROUND

On May 18, 2017, Tereise filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income, alleging in both applications that she was disabled as of February 18, 2016.  On December 14, 2017, Tereise filed a written request for a hearing.  Tereise

---

[2] Kilolo Kijakazi, Acting Commissioner of Social Security ("the Commissioner"), was later substituted for Andrew Saul, pursuant to Fed. R. Civ. P. 25(d).

and Ron Joseph Fleck,[3] an impartial vocational expert ("VE"), testified at the May 20, 2019 hearing.  [Decision, AR at 15 (dkt. no. 17-3 at PageID #: 111).]

Tereise worked as a massage therapist from at least November 2010 to February 2016.[4]  [Exh. 3E (Disability Report - Adult - Form SSA-3368), AR at 226 (dkt. no. 17-7 at PageID #: 326).]  At the hearing before the ALJ, Tereise testified that she started feeling pain in her back around 2012 and she stopped working in February 2016 due to the pain.  Tereise testified that she has not worked since February 2016.  [Hrg. trans., AR at 62-63 (dkt. no. 17-3 at PageID #: 158-59).]

In the Decision, the ALJ found that Tereise was insured, for purposes of the Social Security Act, through December 31, 2021.  [Decision, AR at 17 (dkt. no. 17-3 at PageID #: 113).]  At step one of the five-step sequential analysis to determine whether a claimant is disabled, the ALJ found that Tereise had engaged in substantial gainful activity from the first quarter to the fourth quarter of 2016, but that there were continuous, twelve-month periods after the alleged onset date

---

[3] The hearing transcript spells the VE's last name as "Flick" instead of "Fleck."  See, e.g., hrg. trans., AR at 57-58 (dkt. no. 17-3 at PageID #: 153-54).  For simplicity, the Court uses the spelling used by the ALJ.

[4] At the hearing before the ALJ, Tereise testified that she started working as a massage therapist in either 2001 or 2002. [Hrg. trans., AR at 69 (dkt. no. 17-3 at PageID #: 165).]

during which Tereise was not engaged in substantial gainful activity.  Thus, the remaining steps were analyzed as to those periods only.  [Id. at 17-18 (dkt. no. 17-3 at PageID #: 113-14).]

At step two, the ALJ found that Tereise had "the following severe impairments: lumbago, secondary to degenerative disc disease; morbid obesity; and asthma."[5]  [Id. at 18 (dkt. no. 17-3 at PageID #: 114) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).]  However, at step three, the ALJ found that none of Tereise's impairments, either individually or in combination, met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Id. at 19 (dkt. no. 17-3 at PageID #: 115) (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).]

In the step four analysis, the ALJ found that Tereise had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: lift or carry 20 pounds occasionally and 10 pounds frequently; could stand and walk for about 4 hours out of 8; sit for about 4 hours out of 8; occasional climbing of stairs and ramps; occasional balancing, stooping, kneeling, crouching,

---

[5] The ALJ found that Tereise's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  [Decision, AR at 18 (dkt. no. 17-3 at PageID #: 114).]  Because Tereise does not challenge the ALJ's findings regarding her mental impairment, the Court does not review the ALJ's findings.

> crawling; no excessive fumes, odors, dusts, gases
> or poor ventilation; occasional hazardous
> machinery or unprotected heights; and no ladders,
> ropes, or scaffolds.

[Id.]   The ALJ found that Tereise's impairments could reasonably be expected to cause the symptoms Tereise described, but the totality of the evidence was not entirely consistent with Tereise's statements about the intensity, persistence, and limiting effects of her symptoms.   [Id. at 20 (dkt. no. 17-3 at PageID #: 116).]

Tereise testified that she has trouble sitting and usually needs to stand up after twenty minutes of sitting. [Hrg. trans., AR at 66 (dkt. no. 17-3 at PageID #: 162).]   She also testified that she has trouble standing and can only stand for fifteen to twenty minutes at a time before needing to sit down.   [Id.]   Tereise stated she could not lift more than a gallon of milk without hurting herself.   [Id. at 67 (dkt. no. 17-3 at PageID #: 163).]   She further testified that she spends about eighty percent of the day in bed.   [Id. at 67–68 (dkt. no. 17-3 at PageID #: 163–64).]

The ALJ asked the VE to opine regarding three hypothetical scenarios.   In the first hypothetical, the ALJ asked the VE to consider an individual with Tereise's RFC. See id. at 74 (dkt. no. 17-3 at PageID #: 170).]   The VE opined that such an individual could not perform Tereise's past work,

but could perform work as a marker, box office cashier, or sales attendant.  [Id. at 74-75 (dkt. no. 17-3 at PageID #: 170-71).] In the second hypothetical, the ALJ asked the VE to consider an individual with the same capabilities as in the first hypothetical, except the second individual was limited to standing and walking for four hours out of eight hours in the workday and sitting for the remaining four hours.  The VE opined that such an individual could perform work as a box office cashier, office helper, and order clerk.  [Id. at 75-76 (dkt. no. 17-3 at PageID #: 171-72).]  In the third hypothetical, the ALJ asked the VE to consider an individual with the same capabilities as in the first and second hypotheticals, but the third individual "had to lie down about two hours a day."[6]  [Id.] The VE opined that such an individual could not perform any work.  [Id. at 76-77 (dkt. no. 17-3 at PageID #: 172-73).]

In the Decision, the ALJ highlighted treatment notes starting in February 2016 showing that, among other things, Tereise had "normal muscle strength, gait, station, lumbar curvature, and no tenderness."  [Decision, AR at 20 (dkt.

---

[6] The ALJ noted that, although Tereise testified that she needed to lie down eighty percent of the day, he would set the hypothetical with an individual that needs to lie down twenty-five percent of the workday, i.e., two hours out of an eight-hour workday.  [Hrg. trans., AR at 76 (dkt. no. 17-3 at PageID #: 172).]

no. 17-3 at PageID #: 116) (citing Exh. 1F, AR at 326 (dkt. no. 17-8 at PageID #: 427)).[7]]  The ALJ also relied on physical therapy notes that showed Tereise "consistently reported an improved ability to move after the sessions with decreased pain and improved tone and range of motion" ("ROM").  [Id. (citing Exh. 3F, AR at 504 (dkt. no. 17-9 at PageID #: 606); id. at 614, 618, 628, 632 (dkt. no. 17-10 at PageID #: 717, 721, 731, 735)).[8]]

The ALJ did "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from [Tereise's] medical sources."  [Id. at 21 (dkt. no. 17-3 at PageID #: 117).]  The ALJ found that the state agency medical consultants' opinions were "somewhat persuasive," but noted the medical evidence supported more limitations than those provided by the state agency medical consultants.  [Id.] Specifically, the ALJ found that Tereise was limited to: "sit, stand, and walk for about 4 hours out of 8, based on [Tereise's] reported difficulty sitting, standing, or walking for long periods[.]"  [Id.]  Although Dr. Nichols opined that Tereise

---

[7] AR pages 324 to 327 is the treatment record for Tereise's February 18, 2016 visit, signed by Michael Nichols, M.D., on February 19, 2016.  [Dkt. no. 17-8 at PageID #: 425-28.]

[8] Exhibit 3F is the treatment records from Therapydia - Kona for March 2, 2016 to May 30, 2018.  [Dkt. nos. 17-9, 17-10.]

"would need to rest in excess of the normal break periods; would need unscheduled breaks during an 8-hour workday; would be absent more than 3 days per month; and could rarely/never lift any weight, balance, stoop, or bend," see id. at 22 (dkt. no. 17-3 at PageID #: 118) (citing Exh. 5F),[9] the ALJ did not find Dr. Nichols's opinions persuasive because the stated limitations were not consistent with Dr. Nichols's treatment notes and Tereise's physical therapy records, see id. (citations omitted).

The ALJ found that "the evidence d[id] not show that [Tereise's] impairments result in limitations greater than those assessed in the above residual functional capacity." [Id.] However, the ALJ found that, based on her RFC, Tereise was incapable of returning to her past relevant work as a massage therapist. [Id.]

At step five, the ALJ noted that Tereise was in the "younger individual age 18-49" category on the alleged disability onset date. [Id. at 23 (dkt. no. 17-3 at PageID #: 119) (citing 20 C.F.R. §§ 404.1563, 416.963).] Further, Tereise has at least a high school education, and she speaks

_____

[9] Exhibit 5F is a Medical Source Statement signed on April 10, 2019. [AR at 719-22 (dkt. no. 17-11 at PageID #: 823-26).] At the hearing, the ALJ asked Tereise to verify the identity of the person who signed the Medical Source Statement, and Tereise testified that Dr. Nichols signed the document. See hrg. trans., AR at 77 (dkt. no. 17-3 at PageID #: 173).

English.  [Id. (citing 20 C.F.R. §§ 404.1564, 416.964).]  The
Decision does not address whether Tereise has transferable job
skills because the ALJ found that, using the Medical-Vocational
Rules framework, Tereise was "not disabled," irrespective of the
transferable skills issue.  [Id. (citing SSR 82-41; 20 C.F.R.
Part 404, Subpart P, Appendix 2).]  The ALJ found that, based on
Tereise's age, education, work experience, and RFC, Tereise
could make a successful adjustment to the following jobs that
exist in significant numbers in the national economy: box
officer cashier, marker, office helper, and food and beverage
clerk.  [Id. at 23–24 (dkt. no. 17-3 PageID #: 119–20).]  The
ALJ therefore found that Tereise was not under a disability from
the alleged onset date to the date of the Decision.  [Id. at 24
(dkt. no. 17-3 at PageID #: 120) (citing 20 C.F.R.
§§ 404.1520(g), 416.920(g)).]

On July 11, 2019, Tereise requested review of the
Decision.  [Exh. 12B, AR at 190-92 (dkt. no. 17-5 at PageID
#: 288-90).]  Tereise submitted additional medical evidence, but
the Appeals Council found that the additional medical evidence
did "not show a reasonable probability that it would change the
outcome of the decision."  [Notice of Appeals Council Action
("AC Notice"), AR at 2 (dkt. no. 17-3 at PageID #: 98).]  By
notice dated April 24, 2020, the Appeals Council denied
Tereise's request for review.  [AC Notice, AR at 1–3 (dkt.

no. 17-3 at PageID #: 97-99).]   Thus, the ALJ's Decision

constitutes the final decision of the Commissioner.   [Id. at 1

(dkt. no. 17-3 at PageID #: 97).]

    In the instant Appeal, Tereise asserts she is unable

to work because of back pain associated with degenerative disc

disease of the lumbar spine, asthma, and morbid obesity.   She

contends the Decision should be reversed because: the ALJ failed

to provide adequate reasons for rejecting the medical opinion of

Dr. Nichols; the ALJ erred in rejecting Tereise's symptom

testimony; and the ALJ's RFC finding is not supported by

substantial evidence.

**STANDARD**

    "A district court has jurisdiction pursuant to 42

U.S.C. § 405(g) to review final decisions of the Commissioner of

Social Security."   Concannon v. Saul, Civ. No. 19-00267-ACK-RT,

2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), aff'd,

No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

**I.   Review of Social Security Decisions**

    The Ninth Circuit conducts a de novo review of a

district court's order in a social security appeal.   Treichler

v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir.

2014).   Thus, in reviewing the Commissioner's decision, the

Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error.  Id.  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted).  In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole.  Id.  Where the record, considered as a whole, could support either affirmance or reversal, the district court must affirm the decision.  Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.  **Five-Step Analysis**

The following analysis applies in cases involving review of the denial of social security disability benefits or supplemental security income benefits.[10]

---

[10] Although Title II and Title XVI of the Social Security Act are each "governed by a separate set of regulations, the regulations governing disability determinations are

(. . . continued)

To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation.  See 20 C.F.R. § 404.1520.  The burden of proof is on the claimant at steps one through four.  See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571-404.1572, 416.971-416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A).  The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity."  § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530,

substantially the same for both programs."  Ford v. Saul, 950 F.3d 1141, 1148 n.1 (9th Cir. 2020) (citations omitted).  Thus, both programs are assessed under the five-step analysis in disability determinations.

110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)
(footnote omitted).[11]  If an impairment does not
meet a listing, it may nevertheless be "medically
equivalent to a listed impairment" if the
claimant's "symptoms, signs, and laboratory
findings are at least equal in severity to" those
of a listed impairment.  § 404.1529(d)(3).  But a
claimant cannot base a claim of equivalence on
symptoms alone.  Even if the claimant alleges
pain or other symptoms that makes the impairment
more severe, the claimant's impairment does not
medically equal a listed impairment unless the
claimant has signs and laboratory findings that
are equal in severity to those set forth in a
listing.  § 404.1529(d)(3).  If a claimant's
impairments meet or equal the criteria of a
listing, the claimant is considered disabled.
§ 404.1520(d).

If the claimant does not meet or equal a
listing, the ALJ proceeds to step four, where the
ALJ assesses the claimant's residual functional
capacity (RFC) to determine whether the claimant
can perform past relevant work, § 404.1520(e),
which is defined as "work that [the claimant has]
done within the past 15 years, that was
substantial gainful activity, and that lasted
long enough for [the claimant] to learn to do
it," § 404.1560(b)(1).  If the ALJ determines,
based on the RFC, that the claimant can perform
past relevant work, the claimant is not disabled.
§ 404.1520(f).

At step five, the burden shifts to the
agency to prove that "the claimant can perform a
significant number of other jobs in the national
economy." Thomas v. Barnhart, 278 F.3d 947, 955
(9th Cir. 2002).  To meet this burden, the ALJ
may rely on the Medical-Vocational Guidelines
found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or
on the testimony of a vocational expert.  Tackett
v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).
"[A] vocational expert or specialist may offer

---

11 Sullivan has been superseded by statute on other grounds.
See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir.
2013).

> expert opinion testimony in response to a
> hypothetical question about whether a person with
> the physical and mental limitations imposed by
> the claimant's medical impairment(s) can meet the
> demands of the claimant's previous work, either
> as the claimant actually performed it or as
> generally performed in the national economy."
> § 404.1560(b)(2).  An ALJ may also use "other
> resources, such as the 'Dictionary of
> Occupational Titles' and its companion volumes
> and supplements, published by the Department of
> Labor."  Id.
>
> Throughout the five-step evaluation, the ALJ
> "is responsible for determining credibility,
> resolving conflicts in medical testimony, and for
> resolving ambiguities."  Andrews v. Shalala, 53
> F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (some

alterations in Ford) (footnotes omitted).

## DISCUSSION

## I.   Consideration of Medical Evidence

At the outset, the Court notes that the Social

Security Administration promulgated new regulations which apply

to the consideration of medical opinions and prior

administrative medical findings related to claims filed on or

after March 27, 2017.  See 20 C.F.R. § 404.1520c.  The new

regulations no longer require that deference be given to

treating physicians.  Compare § 404.1520c(a), with 20 C.F.R.

§ 404.1527 ("Evaluating opinion evidence for claims filed before

March 27, 2017"), and Lester v. Chater, 81 F.3d 821, 830 (9th

Cir. 1995) ("As a general rule, more weight should be given to

the opinion of a treating source than to the opinion of doctors who do not treat the claimant." (citation omitted)), *as amended* (Apr. 9, 1996).  To date, there is no controlling case law addressing the issue of what effect the new regulations have on the case law interpreting the prior regulations.  See, e.g., Madison L. v. Kijakazi, Case No. 20-cv-06417-TSH, 2021 WL 3885949, at *4 (N.D. Cal. Aug. 31, 2021) ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." (citation omitted)).  However, it is not necessary to resolve that issue in the instant case because the result would be the same under either standard.

### A.   Dr. Nichols

Tereise argues the ALJ "improperly rejected Dr. Nichols's opinion because he failed to provide specific and legitimate reasons based in substantial evidence for the rejections."  [Opening Brief at 18 (citation omitted).]  The ALJ summarized Dr. Nichols's medical opinion as follows:

> On April 10, 2019, Michael Nichols, MD opined that the claimant could: sit for 15 minutes and would then need to lie down or recline in a supine position; stand or walk for 30 minutes, a total of one hour in an 8 hour workday, before

> the claimant would need to lie down or recline in
> a supine position for 30 minutes, for a total of
> one hour during an 8 hour day (5F).  Dr. Nichols
> also opined that the claimant would need to rest
> in excess of the normal break periods; would need
> unscheduled breaks during an 8-hour workday;
> would be absent more than 3 days per month; and
> could rarely/never lift any weight, balance,
> stoop, or bend (5F).  Dr. Nichols opined that the
> limitations started in February 2012 and
> diagnosed the claimant with low back pain and
> degenerative disc disease noting abnormal gait,
> reflex changes, muscle weakness and left positive
> straight leg raise (5F/5).  Treatment notes also
> show Dr. Nichols noted the claimant has been
> unable to work at all since the injury
> (4F/75).[12] . . .

[Decision, AR at 22 (dkt. no. 17-3 at PageID #: 118).]  However,

the ALJ did not find Dr. Nichols's opinion persuasive because

> it is not well supported by Dr. Nichols'
> treatment notes showing moderate tenderness at
> L3-L4 and L4-L5; limited extension full to
> 25 degrees and absent knee reflexes bilaterally
> and ankle reflexes bilaterally; but otherwise
> normal gait and station; normal lumbar curvature;
> 4/5 to 5/5 muscle strength; intact light touch,
> symmetrical in the trunk, upper, and lower
> extremities; and negative straight leg raise
> (e.g., 4F/3, 54, 77).

[Id.]

### 1.   Whether the ALJ Cited to a Sufficient Number of Treatment Records

Tereise contends that the ALJ erred in finding

Dr. Nichols's Medical Source Statement opinions unpersuasive

---

[12] Exhibit 4F is Dr. Nichols's treatment records from November 21, 2017 to February 11, 2019.  [AR at 640-717 (dkt. no. 17-11 at PageID #: 744-821).]

because the ALJ only cited to three of Dr. Nichols's examinations out of approximately forty examinations during the disability period.  [Opening Brief at 18.]  The ALJ cited to treatment records from Tereise's visits with Dr. Nichols on November 21, 2017, August 29, 2018, and March 12, 2019.  [cite to Decision]  In the November 21, 2017 treatment record, Dr Nichols noted that Tereise was experiencing "aching, sharp [pain], soreness, and tightness" in her lower back.  [Exh. 4F, AR at 640 (dkt. no. 17-11 at PageID #: 744).]  Dr. Nichols also noted that Tereise exhibited: "Normal gait.  Station normal. . . .  **Tenderness** off midline bilaterally in a symmetrical distribution.  **L3–L4 – moderate.  L4–L5 – moderate. . . . low back pain** bilaterally – **moderate**; back pain continues and is increased in all flexion extension moves.  Muscle strength normal."  [Id. at 642 (dkt. no. 17-11 at PageID #: 746) (emphases in original).]  Dr. Nichols's notes for the August 29, 2018 and March 12, 2019 visits are virtually identical to the November 21, 2017 visit notes.  See id. at 690, 693 (dkt. no. 17-11 at PageID #: 794, 797); id. at 714, 716 (dkt. no. 17-11 at PageID #: 818, 820).  The only relevant substantive difference between the three records is that the March 12, 2019 record noted Tereise's "[l]eft extensor hallucis longus" had "4/5 strength," see Exh. 4F, AR at 716 (dkt. no. 17-11 at PageID #: 820) (emphasis omitted), whereas the two other

17

records noted Tereise had normal muscle strength, see id. at 693

(dkt. no. 17-11 at PageID #: 797); id. at 716 (dkt. no. 17-11 at

PageID #: 820).

The records from Tereise's ten visits from

February 18, 2016 – the alleged disability onset date – to

October 27, 2016,[13] showed the following:

> **MUSCULOSKELETAL:** Normal gait.  Station normal.
> Inspection/palpation of digits and nails normal.
> **Lumbar Spine:** Normal curvature.  No tenderness.
> Active ROM back pain continues and is increased
> in all flexion extension moves.  Muscle strength
> normal.
> **Right upper extremity:** normal
> inspection/palpation, ROM, muscle strength and
> tone, and stability.
> **Left upper extremity:** normal
> inspection/palpation, ROM, muscle strength and
> tone, and stability.

See, e.g., Exh. 1F, AR at 326 (dkt. no. 17-8 at PageID #: 427)

(emphases in original); see also id. at 330, 334, 338, 343–44,

348–49, 354, 359, 364, 369 (dkt. no. 17-8 at Page ID #: 431,

435, 439, 444–45, 449–50, 455, 460, 465, 470).  Dr. Nichols

observed the tenderness in Tereise's back on November 25, 2016.

See Exh. 1F, AR at 374 (dkt. no. 17-8 at PageID #: 475).  The

treatment records showed continued tenderness from November 25,

---

[13] Exhibit 1F is Dr. Nichols's treatment records from
March 19, 2015 to May 11, 2017.  [AR at 284-406 (dkt. no. 17-8
at PageID #: 385-507).]  The records from February 18, 2016 to
October 27, 2016 are AR 324-70.  [Dkt. no. 17-8 at PageID
#: 425-71).]

2016 to March 12, 2019, during which time Tereise had
approximately thirty visits with him.  See id. 374–405 (dkt.
no. 17-8 at PageID #: 475–506); Exh. 2F, AR at 408-33 (dkt.
no. 17-8 at PageID #: 509–34);[14] Exh. 4F, AR at 640–717 (dkt.
no. 17-11 at Page ID #: 744–821).  Thus, the three visits cited
by the ALJ are consistent with, and representative of, Dr.
Nichols's overall observations throughout the treatment period.
Therefore, to the extent that Tereise argues the ALJ erred
because he only cited to the records of three visits, her
argument fails.  Cf. Concannon, 2020 WL 1492623, at *15
("Although the ALJ did not cite all of these instances or
activities specifically, they and other cites from the record
offered by the Commissioner serve as examples of the three main
buckets of 'activities' recognized by the ALJ." (citing Warre v.
Comm'r of Social Sec. Admin., 439 F.3d 1001, 1005 n.3 (9th Cir.
2006))).

            2.   Whether the Inconsistencies Between
                 Dr. Nichols's Treatment Records
                 and the Medical Source Statement
                 Support Rejecting Dr. Nichols's Opinions

        Tereise next argues the ALJ erred in disregarding
Dr. Nichols's opinion in the Medical Source Statement because
Dr. Nichols's treatment notes are not necessarily inconsistent

_____

    [14] Exhibit 2F is Dr. Nichols's treatment records from
June 8, 2017 to October 24, 2017.  [AR at 408-33 (dkt. no. 17-8
at PageID #: 509-34).]

with the Medical Source Statement.  Dr. Nichols's Medical Source
Statement was "premised upon" his diagnosis of "low back pain"
and "degenerative disc disease."  See Medical Source Statement,
AR at 722 (dkt. no. 17-11 at PageID #: 826).  In the Decision,
the ALJ emphasizes two inconsistencies between Dr. Nichols's
treatment notes and his Medical Source Statement.  As to the
first inconsistency, Dr. Nichols's treatment notes stated that
Tereise had normal gait, while the Medical Source Statement
stated Tereise had abnormal gait.  See Decision, AR at 22 (dkt.
no. 17-3 at PageID #: 118).  In discussing the inconsistency,
the ALJ pointed to the treatment notes addressing Tereise's:
normal gait, station, and lumbar curvature; intact light touch,
trunk, upper extremity, and lower extremity symmetry; and
negative straight leg raise.  See id.  Noticeably, however, the
ALJ failed to address Dr. Nichols's treatment notes concerning
Tereise's pain.  Thus, even if Dr. Nichols contradicted his
prior findings regarding Tereise's gait in the Medical Source
Statement, the ALJ did not sufficiently address or explain
Dr. Nichols's findings relating to Tereise's back pain.[15]

---

[15] In the Decision, the ALJ only states that "treatment
notes by Michael C. Nichols, MD showed back pain . . . ."
[Decision, AR at 21 (dkt. no. 17-3 at PageID #: 117).]  The ALJ
did not address Dr. Nichols's findings regarding progression in
the intensity of Tereise's pain over the treatment period.

In fact, every treatment record from at least February 18, 2016 to March 12, 2019 addressed Tereise's lower back pain.  Dr. Nichols noted that, during this period, Tereise's back pain often fluctuated.  For example, in a treatment record dated February 18, 2016, Dr. Nichols noted that Tereise's usual pain was a five out of ten, but the pain intensity would fluctuate from a two to a nine out of ten.  See Exh. 1F, AR at 324 (dkt. no. 17-8 at PageID #: 425).  On June 6, 2018, Tereise reported persistent back pain ranging from three or four out of ten – showing slight improvement and less intense pain.  See Exh. 4F, AR at 675 (dkt. no. 17-11 at PageID #: 779).  On August 1, 2018, however, Tereise experienced increased back pain, ranging from four to seven out of ten.  See id. at 685 (dkt. no. 17-11 at PageID #: 789).  Tereise also experienced some periods of consistently higher pain levels.  See, e.g., id. at 710 (dkt. no. 17-11 at PageID #: 814) (2/11/19 treatment record stating "back pain continues . . . pain level 7/10"); Exh. 2F, AR at 408 (dkt. no. 17-8 at PageID #: 509) (6/8/17 treatment record stating "back pain continues . . . pain level 7/10").

Additionally, other than stating that Tereise "was prescribed narcotic pain medications," the ALJ failed to adequately address Tereise's medication for her pain.  See Decision, AR at 21 (dkt. no. 17-3 at PageID #: 117).

Dr. Nichols would refill at least one of Tereise's pain
medications at every visit.  At times, Dr. Nichols prescribed
Tereise dronabinol and to "[t]ake 1 capsule by mouth three times
a day as needed for pain."  See, e.g., Exh. 4F, AR at 694 (dkt.
no. 17-11 at PageID #: 798) (8/29/18 treatment record).  He also
prescribed her hydrocodone-acetaminophen and to "[t]ake 1 tablet
by mouth three times a day as needed for pain."  See, e.g., id.
Dr. Nichols would sometimes prescribe Tereise cyclobenzaprine
and to "[t]ake 1 tablet by mouth four times a day as needed."
See, e.g., id. at 705 (dkt. no. 17-11 at PageID #: 809) (12/3/18
treatment record showing Dr. Nichols prescribing
cyclobenzaprine, dronabinol, and hydrocodone-acetaminophen).

        Overall, the ALJ did not adequately address
Dr. Nichols's treatment notes regarding Tereise's pain in
concluding that the Medical Source Statement conflicted with his
prior treatment notes.  This is important here because
Dr. Nichols premised his opinions in the Medical Source
Statement, in large part, on Tereise's lower back pain.  See
Exh. 5F, AR at 722 (dkt. no. 17-11 at PageID #: 826).  Although
"[t]he ALJ is not required to discuss every piece of evidence or
address every issue," he "must explain why significant probative
evidence has been rejected."  See Matuu v. Kijakazi, CIVIL
NO. 20-00446 HG-KJM, 2021 WL 6062872, at *6 (D. Hawai`i Dec. 22,
2021) (citing Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th

Cir. 1984)).  The ALJ did not do so here.  The ALJ failed to
explain why Dr. Nichols's inconsistent opinions regarding
Tereise's gait negated perhaps the most probative evidence in
the record – treatment records concerning Tereise's back pain.
Accordingly, because the ALJ failed to consider Dr. Nichols's
findings regarding Tereise's back pain, including the extent of
the medication prescribed for her pain, he erred.

As to the second inconsistency, Dr. Nichols stated in
the Medical Source Statement that Tereise's disability onset
date was February 2012.  See Exh. 5F, AR at 722 (dkt. no. 17-11
at PageID #: 826).  The ALJ stated that, "although Dr. Nichols
limited [Tereise] as far back as February 2012, [she] continued
working as a massage therapist until February 2016." [Decision,
AR at 22 (dkt. no. 17-3 at PageID #: 118) (citation omitted).]
To the extent that the ALJ considered this inconsistency in the
overall determination of Dr. Nichols's credibility, the Court
makes no finding because "the ALJ is responsible for determining
credibility." See Ford, 950 F.3d at 1149 (citation and internal
quotation marks omitted).

### 3. Whether the Physical Therapy Records are Inconsistent with the Medical Source Statement

Tereise also argues the ALJ erred in finding that
Tereise's physical therapy records did not support the
limitations outlined in the Medical Source Statement.  The ALJ

found that the limitations identified in the Medical Source Statement were not consistent with Tereise's physical therapy records because Tereise "consistently reported an improved ability to move after the sessions with decreased pain and improved tone and range of motion."  [Decision, AR at 22 (dkt. no. 17-3 at PageID #: 118) (citing Exh. 3F at 70, 180, 184, 194, 198).]  In supporting his conclusion, the ALJ cited four physical therapy records.  Tereise argues the ALJ failed to consider the totality of the physical therapy records in discounting the Medical Source Statement.  The Court agrees.

The ALJ cited to a physical therapy record dated May 4, 2016 that showed Tereise "presented with hypertonicity in her [right] psoas . . . which was relieved completely following treatment."  [Exh. 3F, AR at 504 (dkt. no. 17-9 at PageID #: 606).  But, a physical therapy record dated July 28, 2016 stated Tereise's "best to current pain levels decreased to 0-3/10," and "[h]er worst pain in the last week has increased to 9/10."  [Id. at 491 (dkt. no. 17-9 at PageID #: 593.]  The ALJ also cited to a physical therapy record dated February 2, 2018 that showed Tereise experienced "improved tone after session and improved ROM."  See id. at 614 (dkt. no. 17-10 at PageID #: 717).  However, that record also mentioned that Tereise's "primary concern is length of pain and chronic nature affecting daily activities."  [Id.]  That physical therapy record further

24

stated Tereise continued to experience problems with: low back ROM, hip and core strength, and maintaining an independent home exercise plan ("HEP").  See id.  The ALJ also relied on a January 23, 2018 physical therapy record, but that record only stated that Tereise experienced "improved pain that **last[ed] for a few days** after last session allowing her to perform exercises at home."  [Id. at 618 (dkt. no. 17-10 at PageID #: 721) (emphasis added).]

Moreover, the June 26, 2018 physical therapy record that the ALJ cited showed that Tereise experienced "increased tone and pain with hip flexion on R at beginning of session," but Tereise "improved with release and pain was not present when leaving."  [Id. at 628 (dkt. no. 17-10 at PageID #: 731).]  This record showed the pain improvement related to the right hip flexion, but it does not mention Tereise's back pain.  The ALJ also cited a June 12, 2018 physical therapy record which stated that Tereise experienced "improved ability to move after session with decreased tone and pain."  [Id. at 632 (dkt. no. 17-10 at PageID #: 735).]  But, the record also showed that the session focused on relieving issues in Tereise's hips.  See id.  Indeed, the record indicated that Tereise experienced pain in her lower back during her activities of daily living.  See id.

Although Tereise experienced some pain improvement after physical therapy sessions, the ALJ did not sufficiently

25

explain how Tereise's improvement is inconsistent with the Medical Source Statement.  First, some pain improvement in Tereise's hip flexor, for example, does not necessitate or imply pain improvement in her lower back.  Second, even if Tereise experienced some improvement with her back pain, the ALJ did not analyze the extent of the improvement.  Many of the physical therapy records addressing Tereise's pain improvement showed that the improvement was either temporary or only in one area. See, e.g., id. at 618 (dkt. no. 17-10 at PageID #: 721) (1/23/18 physical therapy record stating Tereise "noted improved pain that last [sic] for a few days after last session"); id. at 528 (dkt. no. 17-9 at PageID #: 630) (11/2/17 physical therapy record stating Tereise "continue[d] to get temporary relief from therapy," but that she was unable maintain or create those benefits with her HEP); id. at 550 (dkt. no. 17-10 at PageID #: 653) (8/30/17 physical therapy record stating Tereise was "noted with improved pain, strength, and flexibility, but it also appears that her pain has shifted lower to SI and b/l upper hips with increased tone"); id. at 593-94 (dkt. no. 17-10 at PageID #: 696—67) (3/16/18 treatment record showing that, although Tereise "note[d] pain is decreased and more manageable," she still experienced "radicular symptoms" in her hips, "pain with CPA/UPA" and "[p]ain with paraspinal palpation").

26

Third, some of the physical therapy records that the ALJ relied on showed that the temporary pain improvement allowed Tereise to perform exercises at home. See id. at 618 (dkt. no. 17-10 at PageID #: 721). To the extent that the ALJ considered Tereise's ability to perform her HEP to imply overall pain improvement, the ALJ did not explain or address how Tereise's ability to perform some exercises in the comfort of her home contradicts Dr. Nichols's opinion in the Medical Source Statement.

Finally, the ALJ failed to consider other physical therapy records that highlighted Tereise's pain and overall difficulties associated with her back pain. For instance, the record of her May 30, 2018 physical therapy session showed that Tereise experienced lumbar "pain with flexion and extension," "[p]alpable tenderness or increased muscular tone," "[i]ncreased tone and pain with lumbar paraspinals, multifidus, and gluts," and "increased tone and guarding surrounding low back and hips which amounts to a protective response due to pain with movement." See id. at 637–638 (dkt. no. 17-10 at PageID #: 740–41). Other physical therapy records show similar findings. See, e.g., id. at 630 (dkt. no. 17-10 at PageID #: 733) (6/19/18 physical therapy record addressing Tereise's primary complaint regarding "lack of mobility in WBing as well as increased pain at rest" and "pain persists after exercise at hip and back").

27

Thus, the ALJ's single statement summarizing the physical therapy records does not sufficiently address Tereise's pain fluctuation and temporary pain relief as outlined in the physical therapy records.

Accordingly, the ALJ erred in finding that Tereise's physical therapy records were inconsistent with the Medical Source Statement.

**B.    State Agency Medical Consultants**

Tereise argues the ALJ erred in finding the state agency medical consultants' opinions to be "somewhat persuasive." [Opening Brief at 22.]  The ALJ stated:

> The state agency medical consultations opined that the claimant could perform light work; occasional postural activities; never climb ladders, ropes, or scaffolds; and avoid concentrated exposure to hazards (1A; 2A).  On reconsideration, the consultants adopted the limitations but added the limitation to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (5A; 6A).  The undersigned finds the opinions to be somewhat persuasive to the extent consistent with the RFC herein.  However, the medical evidence discussed above supports further limitations to: sit, stand, and walk for about 4 hours out of 8, based on the claimant's reported difficulty sitting, standing, or walking for long periods, to the extent supported by evidence showing moderate tenderness at L3-L4 and L4-L5; extension full to 25 degrees with moderate low back pain bilaterally; and continued back pain increased in all flexion/extension moves (e.g., 2F/16; 4F/54).

[Decision, AR at 21 (dkt. no. 17-3 at PageID #: 117).]

Other than stating that the medical consultants'
opinions were "somewhat persuasive to the extent consistent with
the RFC," the ALJ did not provide any reasons as to why he found
the opinions to be persuasive.  Nor did the ALJ state which
specific opinions he found to be persuasive.  This is important
here because the ALJ rejected some of the medical consultants'
opinions.  For example, the ALJ stated the medical evidence
showed that some of Tereise's limitations were more severe than
those outlined by the medical consultants.  Specifically, the
medical consultants opined that Tereise could stand and/or walk
for "[a]bout 6 hours in an 8-hour workday" and sit for "[a]bout
6 hours in an 8-hour workday."  See Exh. 1A, AR at 84 (dkt.
no. 17-4 at PageID #: 181); Exh. 2A, AR at 94 (dkt. no. 17-4 at
PageID #: 191); Exh. 5A, AR at 106 (dkt. no. 17-4 at PageID
#: 203); Exh. 6A, AR at 116 (dkt. no. 17-4 at PageID #: 213).
Yet, the ALJ disagreed - finding that Tereise could stand, walk,
or sit for about four hours out of an eight-hour workday.  See
Decision, AR at 21 (dkt. no. 17-3 at PageID #: 117).

It is unclear, then, what was persuasive about the
medical consultants' opinions.  Ultimately, the ALJ failed to
"explain how [he] considered the supportability and consistency
factors" in finding the medical consultants' opinions
persuasive.  See 20 C.F.R. § 404.1520c(b)(2).  He therefore
erred.  See Moiha v. Kijakazi, CIVIL NO. 21-00130 JAO-RT, 2022

29

WL 475394, at *8 (D. Hawai`i Feb. 16, 2022) ("Accordingly, because the ALJ did not provide **any** analysis with respect to Drs. Matsuno's and Han's opinions, he erred." (emphasis in Moiha) (citing 20 C.F.R. § 404.1520c(b)(2))).

## II.  <u>Tereise's Symptom Testimony</u>

Tereise contends that the ALJ erred in rejecting her symptom testimony.  [Opening Brief at 25.]  The Court agrees. The Ninth Circuit has stated:

> An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  <u>Lingenfelter[ v. Astrue</u>], 504 F.3d [1028,] 1035-36 [(9th Cir. 2007)] (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)).  In this analysis, the claimant is **not** required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996).  Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  <u>Id.</u>
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  <u>Smolen</u>, 80 F.3d at 1281; <u>see also</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative

> evidence thereof, he or she may only find an
> applicant not credible by making specific
> findings as to credibility and stating clear and
> convincing reasons for each.").  This is not an
> easy requirement to meet: "The clear and
> convincing standard is the most demanding
> required in Social Security cases."  Moore v.
> Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924
> (9th Cir.2002).

Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)

(emphasis and some alterations in Garrison) (footnote omitted).

> Here, the ALJ found

> that the claimant's medically determinable
> impairments could reasonably be expected to cause
> the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence
> and limiting effects of these symptoms are not
> entirely consistent with the medical evidence and
> other evidence in the record for reasons
> explained in this decision.

[Decision, AR at 20 (dkt. no. 17-3 at PageID #: 116).]  The ALJ

then summarized Tereise's testimony as follows:

> The claimant testified that she has back pain,
> specifically lower back pain that sometimes
> radiates to the right hip area.  She testified
> that physical therapy helps only temporarily.
> She testified she could sit for 20 minutes and
> stand or walk 15 to 20 minutes before needing to
> sit down.  She testified that she lies down 80%
> of the day.  She testified that she could not
> lift more than a gallon of milk.  She testified
> that she uses inhalers and a steroid twice a day
> for asthma.  She testified that bending is very
> difficult and triggers back spasms. . . .

[Id.]  The ALJ proceeded to discount Tereise's testimony by

summarizing some of the medical record.  See id. at 20-22 (dkt.

no. 17-3 at PageID #: 116-18).  However, the ALJ failed to

provide clear and convincing reasons for rejecting Tereise's
symptom testimony.

First, the ALJ did not "identify the testimony [he]
found not credible" and "did not link that testimony to the
particular parts of the record supporting [his] non-credibility
determination."  See Brown-Hunter, 806 F.3d at 494.  Second, the
ALJ's "summary of medical evidence in support of a residual
functional capacity finding is not the same as providing clear
and convincing **reasons** for finding the claimant's symptom
testimony not credible."  Id. (emphasis in Brown-Hunter).

Finally, to the extent that the ALJ's summary of the
medical evidence could be construed as reasons to reject
Tereise's testimony, they are not convincing.  For instance, the
ALJ relies on Dr. Nichols's finding, from February 18, 2016,
that Tereise had normal gait.  See Decision, AR at 20 (dkt.
no. 17-3 at PageID #: 116) (citing Exh. 1F, AR at 326 (dkt.
no. 17-8 at PageID #: 427)).  But, Tereise's normal gait does
not necessarily contradict her testimony regarding experiencing
debilitating pain.  See Platt v. Saul, Case No. 19-cv-00192-DKW-
WRP, 2020 WL 435354, at *6 (D. Hawai`i Jan. 28, 2020) ("Platt's
normal gait, therefore, is not a convincing reason to reject his
symptom testimony, at least not without further explanation from
the ALJ.").  While that record showed that Tereise had normal
strength, station, curvature, and no tenderness, it also showed

"[a]ctive ROM back pain continues and is increased in all flexion extension moves," "knee reflex **bilaterally** is absent," and "[a]nkle reflex **bilaterally** is absent." <u>See</u> Exh. 2F, AR at 326–27 (dkt. no. 17-8 at PageID #: 427–28) (emphases in original). The ALJ did not discuss the fact that the same records he relied upon to reject Tereise's symptom testimony also contained findings that supported her symptom testimony.

Moreover, the ALJ's reliance on the physical therapy records also fails as a convincing reason because the physical therapy records showed that Tereise experienced only temporary pain improvement. <u>See</u> <i>supra</i> Discussion Section I.A.3. Tereise's testimony regarding the temporary pain improvement is consistent with the physical therapy records. <u>See</u> hrg. trans., AR at 64 (dkt. no. 17-3 at PageID #: 160). In any event, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years to treat them as a basis for concluding a claimant is capable of working." <u>Garrison</u>, 759 F.3d at 1017 (citation omitted).[16] Because the ALJ "failed to identify

---

[16] The Court notes that, in <u>Garrison</u>, the Ninth Circuit addressed waxing and waning symptoms as they relate to mental health issues. <u>See</u> <u>Garrison</u>, 759 F.3d at 1017. However, some courts have applied the same rationale to physical ailments. <u>See, e.g.</u>, <u>G.O. v. Saul</u>, Case No. 19-cv-01829-JCS, 2020 WL

(. . . continued)

**specifically** which of [Tereise's] statements [he] found not credible and why[,]" he erred.  See Brown-Hunter, 806 F.3d at 493 (emphasis added).

III. **Whether the Errors Were Harmless**

The Court has concluded that the ALJ erred by: rejecting Dr. Nichols's opinions in the Medical Source Statement on the ground that the treatment notes were inconsistent with them; rejecting Dr. Nichols's opinions in the Medical Source Statement on the ground that the physical therapy notes were inconsistent with them; and rejecting Tereise's symptom testimony.  The VE testified that a person with similar limitations to those in Tereise's RFC who also needed to lie down for at least two hours a day could not be employed.  See hrg. trans., AR at 76-77 (dkt. no. 17-3 at PageID #: 172-73). Based on the VE's testimony, the ALJ's errors were not harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is 'inconsequential to the ultimate nondisability determination.'" (quoting Alaska

---

5653186, at *20-21 (N.D. Cal. Sept. 23, 2020); Guerra v. Berryhill, 448 F. Supp. 3d 1115, 1125 (D. Nev. 2020) ("While Garrison concerned mental health symptoms specifically, the Court finds the reasoning easily applicable here in the context of chronic pain."); Vitali v. Colvin, No. ED CV 15-2655-PLA, 2016 WL 5019091, at *10 (C.D. Cal. Sept. 19, 2016).  Therefore, the Court relies on Garrison to the extent that its reasoning applies to symptoms of pain.

Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004))).

In light of the Court's rulings, the ALJ's ultimate ruling that Tereise was not disabled was not supported by substantial evidence.  To the extent that Tereise's Appeal raises arguments which are not specifically addressed in this Order, it is not necessary for the Court to reach those arguments.  The Court makes no findings or conclusions regarding those arguments.  Tereise's Appeal is granted insofar as the ALJ's Decision, including the ruling that Tereise is not disabled, is reversed.

## IV.   Scope of Remand

Tereise asks the Court to remand the case to the ALJ with instructions to award benefits.  [Opening Brief at 29.] The Ninth Circuit has stated,

> when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985). The Supreme Court has referred to this remand requirement as the "ordinary 'remand' rule." Gonzales v. Thomas, 547 U.S. 183, 185, 126 S. Ct. 1613, 164 L. Ed. 2d 358 (2006) (internal quotation marks omitted).

Treichler, 775 F.3d at 1099 (alterations in Treichler).  The ordinary remand rule applies in social security cases.  Id.  The Ninth Circuit will "generally remand for an award of benefits only in rare circumstances, where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed."  Id. at 1100 (citations and internal quotation marks omitted).

The instant case does not present the type of rare circumstances that warrants a remand for the award of benefits because "the record raises crucial questions about the extent to which [Tereise's] pain and accompanying symptoms render her disabled."  See Brown-Hunter, 806 F.3d at 495–96.  Tereise's physical therapy records show that she experienced fluctuating pain levels, but they also mention that her rehabilitation potential was "[g]ood."  See, e.g., Exh. 3F, AR at 628 (dkt. no. 17-10 at PageID #: 731) (6/26/18 physical therapy treatment record).  The physical therapy records do not explain what good rehabilitation potential means.  Additionally, Dr. Nichols stated in his treatment notes that Tereise's back pain was, at times, "partially controlled."  See, e.g., Exh. 4F, AR at 645 (dkt. no. 17-11 at PageID #: 749) (12/19/17 treatment record).  However, Dr. Nichols also noted during some of those visits that Tereise would experience pain ranging from three to eight out of ten.  See, e.g., id. at 665 (dkt. no. 17-11 at PageID #: 769)

36

(4/11/18 treatment record stating "back pain partially
controlled 3-8/10 here for refill").  "Where there is
conflicting evidence, and not all essential factual issues have
been resolved, a remand for an award of benefits is
inappropriate."  <u>Treichler</u>, 775 F.3d at 1101 (citation omitted).

The Court therefore finds that further factual
development is necessary and remands this case to the ALJ for
further proceedings.  On remand, the ALJ should: resolve the
factual disputes regarding Tereise's ability to work; reevaluate
Dr. Nichols's opinions related to Tereise's RFC; and reconsider
the RFC finding in light of the new analysis of Dr. Nichols's
opinions, particularly as they relate to Tereise's back pain,
and the other issues addressed in this Order.

## CONCLUSION

On the basis of the foregoing, Tereise's appeal of the
Administrative Law Judge's May 31, 2019 Decision is HEREBY
GRANTED IN PART AND DENIED IN PART.  The Appeal is GRANTED,
insofar as the ALJ's Decision is REVERSED, and DENIED as to
Tereise's request that the remand be limited to the award of
benefits.  This case is REMANDED to the ALJ for further
proceedings consistent with the instant Order.

There being no remaining issues in this case, the
Court DIRECTS the Clerk's Office to enter judgment and close the
case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 29, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**REBECCA TEREISE VS. KILOLO KAJIKAZI, ETC.; CV 20-00279 LEK-RT;
ORDER:  GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL;
REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING
THE CASE FOR FURTHER PROCEEDINGS**